IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GERALD ORTIZ Y PINO,

      Plaintiff,

v.

                                  Case No. 1:24-cv-00240-MIS-JFR

MAGGIE TOULOUSE OLIVER,
in her Official Capacity as
Secretary of State,

      Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

THIS MATTER is before the Court on Plaintiff Gerald Ortiz y Pino's Motion for Preliminary Injunction, ECF No. 10, filed May 16, 2023. Defendant Maggie Toulouse Oliver, in her official capacity as New Mexico Secretary of State, filed a Response on May 30, 2024, ECF No. 12, to which Plaintiff filed a Reply on June 7, 2024, ECF No. 16. The Parties filed supplemental briefs on August 21, 2024. ECF Nos. 21, 22. The Court held a hearing on the Motion on August 28, 2024. See ECF No. 24. Upon review of the Parties' submissions, the record, and the relevant law, the Court will **GRANT IN PART AND DENY IN PART** the Motion.

## I.    Background

Plaintiff Gerald Ortiz y Pino ("Senator Ortiz y Pino") is a New Mexico State Senator. ECF No. 1 ¶ 4. Defendant Maggie Toulouse Oliver ("Secretary Toulouse Oliver") is the New Mexico Secretary of State. Id. ¶ 5.

On January 19, 2021, Senator Ortiz y Pino used his campaign funds to make a $200 donation to high school student Ariana Alvarado "to support her academic endeavors so she could participate in a week-long, out-of-state summer workshop . . . for high school students." Id. ¶ 7.

Pursuant to the Campaign Reporting Act ("CRA"), Senator Ortiz y Pino reported this expenditure to the Secretary of State's office.  Id. ¶ 8.  Secretary Toulouse Oliver concluded that this donation is prohibited by N.M. Stat. Ann. § 1-19-29.1(A)(4), id. ¶ 9, which restricts a political candidate's use of campaign funds for charitable donations to "donations to an organization to which a federal income tax deduction would be permitted under Subparagraph (A) of Paragraph (1) of Subsection (b) of Section 170 of the Internal Revenue Code of 1986, as amended[,]" N.M. Stat. § 1-19-29.1(A)(4).  The Parties appear to agree that under this statute, a political candidate may use campaign funds to make charitable donations only to non-profit organizations under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3).  As such, the statute effectively prohibits charitable donations to individuals.

On September 15, 2023, Secretary Toulouse Oliver's Office sent Senator Ortiz y Pino a letter stating that Senator Ortiz y Pino must replace the campaign funds he used for the donation to Ms. Alvarado with non-campaign money.  ECF No. 1 ¶ 11; Letter from Anastacio F. Trujillo, Disclosure Auditor, Bureau of Elections, Sec'y of State, to Gerald Ortiz y Pino (Sept. 15, 2023), ECF No. 1-1.  The September 15, 2023 Letter requests "voluntary compliance" and states that Senator Ortiz y Pino's failure to reimburse his campaign funds would "be included on an annual report and forwarded to the State Ethics Commission and the Attorney General for further enforcement."  ECF No. 1-1 at 2; see also ECF No. 1 ¶ 11.

On September 25, 2023, Senator Ortiz y Pino's attorney, Phillip Baca, sent a letter to Secretary Toulouse Oliver stating that he believed Section 1-19-29.1(A)(4) violated the First Amendment to the U.S. Constitution because it constitutes a content-based restriction on speech, and, as such, Secretary Toulouse Oliver's "threatened enforcement action against him is unconstitutional."  Letter from Phillip Baca to Maggie Toulouse Oliver, Sec'y of State (Sept. 25,

2023), ECF No. 1-2; <u>see also</u> ECF No. 1 ¶ 12.  He also threatened to file a lawsuit against Secretary Toulouse Oliver if she continued with the enforcement action.[1]  ECF No. 1-2 at 1.  He invited Secretary Toulouse Oliver to provide legal authority establishing the constitutionality of Section 1-19-29.1(A)(4).  <u>Id.</u>; <u>see also</u> ECF No. 1 ¶ 14.  Finally, he requested that Secretary Toulouse Oliver take no action against him until they discussed the matter further.  ECF No. 1-2 at 1; <u>see also</u> ECF No. 1 ¶ 15.

On February 20, 2024, Secretary Toulouse Oliver's Office sent Senator Ortiz y Pino a letter stating that her office had reviewed "all the information [Senator Ortiz y Pino] provided" and determined that his donation to Ms. Alvarado is "not allowed under the New Mexico Campaign Finance Law, § 1-19-29.1(A)(1-7)."  Letter from Anastacio F. Trujillo, Disclosure Auditor, Bureau of Elections, Sec'y of State, to Gerald Ortiz y Pino (Feb. 20, 2024), ECF No. 1-3.  It further states: "We view the inaction to our requests as non-compliance with the Campaign Reporting Act" and "pursuant to the requirements in [N.M. Stat. Ann. § 1-19-32.1(B)], we have prepared an annual report that includes this unresolved discrepancy and have forwarded the information to the State Ethics Commission and the Attorney General for Enforcement."  <u>Id.</u>

According to the Complaint, criminal violations of the Campaign Reporting Act are governed by a three-year statute of limitations, ECF No. 1 ¶¶ 23-24 (citing N.M. Stat. Ann. § 30-1-8(H)), which has expired with regard to Senator Ortiz y Pino's donation to Ms. Alvarado, <u>id.</u> ¶ 23.  Furthermore, the State Ethics Commission has informed Senator Ortiz y Pino that the

---

[1]       Mr. Baca threatened that if Senator Ortiz y Pino were to prevail in any such lawsuit Secretary Toulouse Oliver's Office "will be paying my attorney's fees at $550 per hour."  ECF No. 1-2 at 1.

The September 25, 2023 Letter further states that Mr. Baca "wrote the 2009 amendments to the Campaign Reporting Act, and lobbied those amendments through the Legislature."  <u>Id.</u> at 2.  He also made this representation at the August 28, 2024 hearing on the Motion for Preliminary Injunction.  However, Mr. Baca did not explain why he failed to amend Section 1-19-29.1(A)(4), the law he now claims is unconstitutional.

specific circumstances surrounding the expenditure [to Ms. Alvarado], including the timing and amount of the contested expenditure, in addition to the fact that Senator Ortiz y Pino is not seeking reelection, together do not support the use of the Commission's resources and personnel to commence a civil action related to this expenditure.

Letter from Jeremy Farris, Exec. Dir., State Ethics Comm'n, to Phillip Baca (Mar. 13, 2024), ECF No. 10-2.

On March 8, 2024, Senator Ortiz y Pino initiated this lawsuit by filing a one-count Complaint seeking, inter alia, a declaratory judgment that N.M. Stat. Ann. § 1-19-29.1(A)(4) violates the First Amendment to the U.S. Constitution and an injunction prohibiting Secretary Toulouse Oliver from enforcing Section 1-19-29.1(A)(4)'s restrictions on political expenditures for charitable purposes.  ECF No. 1 at 8.  On April 2, 2024, Secretary Toulouse Oliver filed an Answer and affirmative defenses.  ECF No. 4.

On May 16, 2024, Senator Ortiz y Pino filed the instant Motion for Preliminary Injunction, clarifying that he is asserting a "facial constitutional challenge to Section 1-19-29.1(A)(4)."  ECF No. 10 at 6.  Secretary Toulouse Oliver filed a Response, ECF No. 12, to which Senator Ortiz y Pino filed a Reply, ECF No. 16.  At the Court's invitation, the Parties filed supplemental briefs on August 21, 2024.  ECF Nos. 21, 22.  On August 28, 2024, the Court held a hearing on the Motion. See ECF No. 24.

## II.    Legal Standard

"A preliminary injunction is an extraordinary remedy; it is the exception rather than the rule."  GTE Corp. v. Williams, 731 F.2d 676, 678 (10th Cir. 1984).  As such, it "may only be awarded upon a clear showing that the [movant] is entitled to such relief."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).  See also Planned Parenthood of Kan. v. Andersen, 882

F.3d 1205, 1223 (10th Cir. 2018) ("Preliminary injunctions are extraordinary remedies requiring

that the movant's right to relief be clear and unequivocal.").

> To obtain a preliminary injunction, the movant must show: (1) a substantial
> likelihood of success on the merits; (2) irreparable harm to the movant if the
> injunction is denied; (3) the threatened injury outweighs the harm that the
> preliminary injunction may cause the opposing party; and (4) the injunction, if
> issued, will not adversely affect the public interest.

Gen. Motors Corp. v. Urban Gorilla, LLC, 500 F.3d 1222, 1226 (10th Cir. 2007).  "The third and

fourth factors 'merge' when, like here, the government is the opposing party."  Aposhian v. Barr,

958 F.3d 969, 978 (10th Cir. 2020) (quoting Nken v. Holder, 556 U.S. 418, 435 (2009)), abrogated

on other grounds by Garland v. Cargill, 602 U.S. 406 (2024).

A party seeking a preliminary injunction must demonstrate that "all four of the equitable

factors weigh in its favor," Sierra Club, Inc. v. Bostick, 539 F. App'x 885, 888 (10th Cir. 2013),

and "a plaintiff's failure to prove any one of the four preliminary injunction factors renders its

request for injunctive relief unwarranted[,]" Vill. of Logan v. U.S. Dep't of Interior, 577 F. App'x

760, 766 (10th Cir. 2014).  See also Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC, 562

F.3d 1067, 1070 (10th Cir. 2009) ("To prevail on a motion for a preliminary injunction, the movant

must establish that four equitable factors weigh in its favor . . . .").  "[B]ecause a preliminary

injunction is an extraordinary remedy, the [movant's] right to relief must be clear and

unequivocal."  Aposhian, 958 F.3d at 978 (alterations in original) (quoting Dominion Video

Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1261 (10th Cir. 2004)).

Moreover, three types of preliminary injunctions are disfavored and require a movant to

satisfy a heightened standard.  Colorado v. U.S. Env't Prot. Agency, 989 F.3d 874, 883 (10th Cir.

2021) (citing N.M. Dep't of Game & Fish v. U.S. Dep't of the Interior, 854 F.3d 1236, 1246 n.15

(10th Cir. 2017)).  "They are '(1) preliminary injunctions that alter the status quo; (2) mandatory

preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.'" Id. at 883-84 (quoting N.M. Dep't of Game & Fish, 854 F.3d at 1246 n.15)).  "When seeking a disfavored injunction, the movant 'must make a strong showing' both on the likelihood of success on the merits and on the balance of the harms."  Id. at 884 (quoting O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 976 (10th Cir. 2004)).

### III.   Discussion

Senator Ortiz y Pino seeks an order (1) enjoining Secretary Toulouse Oliver "from enforcing the de facto ban on charitable expenditures to individuals under Section 1-19-29.1(A)(4);" and (2) requiring Secretary Toulouse Oliver "to withdraw her February 2024 referral of Senator Ortiz y Pino to the State Ethics Commission and the Attorney General's Office."  ECF No. 10 at 1.

As an initial matter, Secretary Toulouse Oliver argues that Senator Ortiz y Pino must satisfy the heightened standard for disfavored preliminary injunctions because he is seeking (1) an injunction altering the status quo (because it would enjoin a New Mexico law "that has been in effect and unaltered en toto since 2009" and a provision that has been "unedited since a prior form of this statute was promulgated in 1993"), and (2) a mandatory preliminary injunction (because it seeks to compel Secretary Toulouse Oliver to withdraw her referral to the state ethics commission and the Attorney General's Office).  ECF No. 12 at 4-5.

Senator Ortiz y Pino argues that the heightened standard does not apply because the injunction he seeks would not alter the status quo.  ECF No. 16 at 9.  He argues that the status quo is "the last peaceable uncontested status existing between the parties before the dispute developed" which, in this case, "was the moment before Secretary Toulouse Oliver referred Senator Ortiz y

6

Pino to the Ethics Commission and the Attorney General's Office." Id. Senator Ortiz y Pino did not address Secretary Toulouse Oliver's argument that requiring her to withdraw her referral to the state ethics commission and the Attorney General's Office constitutes a mandatory preliminary injunction. See id.

The Court agrees with Secretary Toulouse Oliver that the heightened standard applies for two reasons. First, Senator Ortiz y Pino's request to enjoin Secretary Toulouse Oliver from enforcing the de facto ban on charitable expenditures to individuals under Section 1-19-29.1(A)(4) would alter the status quo. The Tenth Circuit defines "status quo" as "the reality of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1100 (10th Cir. 1991), overruled on other grounds by O Centro Espirita, 389 F.3d at 975. "A preliminary injunction that alters the status quo goes beyond the traditional purpose for preliminary injunctions, which is only to preserve the status quo until a trial on the merits may be had." Id. at 1099. Here, Senator Ortiz y Pino is seeking to alter the status quo by enjoining enforcement of a statute that "has long been on the books and enforced[.]" O Centro Espirita, 389 F.3d at 1018 (McConnell, J., concurring) (distinguishing between a request to enjoin enforcement of a newly enacted statute, which may not alter the status quo, and a request to enjoin enforcement of a statute that "has long been on the books and enforced," which likely would alter the status quo). Enforcing Section 1-19-29.1(A)(4) is the status quo. As such, Senator Ortiz y Pino's request to enjoin its enforcement is subject to the heightened standard. Id. at 975.

Second, Senator Ortiz y Pino's request for an order requiring Secretary Toulouse Oliver to withdraw her February 2024 referral of Senator Ortiz y Pino to the State Ethics Commission and

the Attorney General's Office is a mandatory injunction.  ECF No. 10 at 1.  Injunctions "that require the 'nonmoving party to take affirmative action'" are disfavored "mandatory" injunctions. Att'y Gen. of Okla. v. Tyson Foods, Inc., 565 F.3d 769, 776 (10th Cir. 2009) (quoting RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1208 (10th Cir. 2009)).  Because Senator Ortiz y Pino is requesting a mandatory injunction, his Motion is subject to the heightened standard.  Id.

### a.  Substantial likelihood of success on the merits

Senator Ortiz y Pino argues that he is likely to succeed on the merits of his claim because Section 1-19-29.1(A)(4) violates his First and Fourteenth Amendment[2] rights "to use campaign funds to make charitable expenditures[,]" ECF No. 10 at 7 (citing Fla. Right to Life, Inc. v. Lamar, 273 F.3d 1318, 1329 (11th Cir. 2001)), and "to make campaign expenditures" which constitutes "core political speech[,]" id. at 8 (citing Republican Party of N.M. v. King, 741 F.3d 1089, 1093 (10th Cir. 2013)).  He argues that statutes prohibiting political candidates from using campaign funds to make certain charitable donations violate the First Amendment.[3]  Id. at 7 (citing Fla. Right to Life, 273 F.3d at 1329).   He argues that restrictions on core political speech must satisfy strict scrutiny, and can only be justified by two "compelling government interests"—specifically, "the prevention of quid pro quo corruption, and the prevention of the appearance of quid pro quo corruption."  Id. at 8 (citing Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 349-50 (2010); Buckley v. Valeo, 424 U.S. 1, 53-54 (1976); King, 741 F.3d at 1094).  He further argues that Section 1-19-29.1(A)(4) constitutes "viewpoint discrimination[,]" id. at 9 (citing Rosenberger

---

[2]      "Protections afforded under the First Amendment have been incorporated into the Fourteenth Amendment to apply against the states."  Homans v. City of Albuquerque, 366 F.3d 900, 902 n.1 (10th Cir. 2004) (citing Everson v. Bd. of Educ. of Ewing Twp., 330 U.S. 1, 13-15 (1947)).

[3]      He also argues that prohibiting non-501(c)(3) charitable organizations from requesting donations from political candidates violates the First Amendment, ECF No. 10 at 7 (citing Minn. Citizens Concerned for Life, Inc. v. Kelley, 427 F.3d 1106, 1116-17 (8th Cir. 2005)), but those facts are not presented in this case.

v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 828-29 (1995)), and is therefore "presumptively unconstitutional[,]" id. (citing Reed v. Town of Gilbert, 576 U.S. 155, 163-64 (2015)).   In this regard, he argues that Section 1-19-29.1(A)(4) is "under-inclusive" because it allows charitable expenditures to 501(c)(3) organizations, but not to individuals, 501(c)(4) advocacy organizations, or "associations not organized under Section 501(c)(3) (for example, a gathering of family, friends, and neighbors raising money to pay for someone's funeral expenses, which is commonly seen on New Mexico's thoroughfares)." Id. at 10.

Secretary Toulouse Oliver argues that Senator Ortiz y Pino has failed to demonstrate a substantial likelihood of success on the merits because Section 1-19-29.1(A)(4) does not burden his right to make charitable expenditures out of campaign funds.   ECF No. 12 at 5-6.  She further argues that Florida Right to Life and Minnesota Citizens Concerned for Life are distinguishable on the facts and do not support the argument that charitable expenditures can be made to individuals.   Id. at 6.  She further argues that to the extent Section 1-19-29.1(A)(4) is subject to strict scrutiny, it survives because it supports the State's interest in preventing quid pro quo corruption (or the appearance thereof).  Id. at 6-7.  She argues that "Plaintiff's alleged 'charitable expenditure' is more properly characterized as a gift than a charitable expenditure[,]" id. at 7 (citing Black's Law Dictionary (11th ed. 2019)), and "[s]uch gifts raise the specter of quid pro quo corruption that the CRA [Campaign Reporting Act] seeks to prohibit[,]" id.  She further argues that Section 1-19-29.1(A)(4)'s restrictions on charitable expenditures do not constitute viewpoint discrimination because the statute does not discriminate based on "communicative content[,]" id. at 8 (quoting City of Austin v. Reagan Nat'l Advert. of Austin, LLC, 596 U.S. 61, 69 (2022)), and it permits contributions to charitable organizations with a variety of viewpoints, id.  She further argues that Senator Ortiz y Pino is unlikely to prevail on the merits because "his request for

injunctive relief is directed towards the wrong party." Id. at 9.  Specifically, Senator Ortiz y Pino

seeks to enjoin enforcement of Section 1-19-29.1(A)(4), but Secretary Toulouse Oliver "has no

power to enforce the CRA and no power over the Attorney General to compel him not to so

enforce." Id.  Rather, "[p]ursuant to Section 1-19-32.1(B), enforcement of discrepancies

discovered by the Secretary in reports of expenditures and contributions is done through

preparation of an annual report then forwarded to the state ethics commission or Attorney General

for enforcement, contingent on the penalties sought." Id. (citing N.M. Stat. Ann. §§ 1-19-32.1(B),

-34.6, -36).

In his Reply, Senator Ortiz y Pino argues that Secretary Toulouse Oliver failed to carry her

"burden to substantiate the 'quid pro quo' corruption the State is seeking to prevent[.]" ECF No.

16 at 3 (citing Fed. Election Comm'n v. Cruz, 596 U.S. 289, 307 (2022)).  He argues that his $200

contribution to Ms. Alvarado "is not exactly what the Supreme Court had in mind when it defined

quid pro quo corruption." Id. at 4.  He further argues that the Supreme Court recently held that

referring matters for prosecution constitutes "the application of state power" which cannot be used

to punish or suppress disfavored expression. Id. at 9 (citing Nat'l Rifle Ass'n of Am. v. Vullo, 602

U.S. 175, 188 (2024)).

In her Supplemental Brief, Secretary Toulouse Oliver argues that the heightened standard

set forth in Cruz and other cases does not apply to the facts of this case because

> the spending restriction at issue in Section 1-19-29.1 places no restrictions on
> campaign expenditures whatsoever, which includes spending to amplify the
> campaign's political communication. NMSA 1978, § 1-19-29.1(A)(1) (2009)[.] "It
> is unlawful for a candidate . . . to make an expenditure of contributions received,
> except for the following purposes[:] (1) expenditures of the campaign[.]" In other
> words, even if a candidate's political speech does not fall under Section 1-19-
> 29.1(A)(4)'s provision for expenditures to charitable organizations, it would still be
> permitted under the Campaign Reporting Act as an "expenditure of the campaign"

under Section 1-19-29.1(A)(1). Plaintiff appears to concede that the gift and proposed future gifts at issue here are not made for the purpose of advancing the interests of the campaign. Because these donations are not political speech as discussed in <u>Buckley</u> and its progeny, they may be restricted for reasons other than the specter of <u>quid pro quo</u> corruption.

ECF No. 21 at 2-3. At the hearing on the Motion, the Secretary argued that Senator Ortiz y Pino's donation to Ms. Alvarado is not "speech" as the Supreme Court defined it in <u>Texas v. Johnson</u>, 491 U.S. 397 (1989).

In his Supplemental Brief, Senator Ortiz y Pino discusses cases striking down laws prohibiting certain campaign expenditures. ECF No. 22 at 1-4. He also retreats from his prior position that Section 1-19-29.1(A)(4)'s restrictions on charitable expenditures constitute <u>viewpoint</u> discrimination and argues instead that it is a content-based restriction on speech that is "presumptively unconstitutional" and subject to strict scrutiny. <u>Id.</u> at 5-6 (citing <u>Reed</u>, 576 U.S. at 163-64; <u>King</u>, 741 F.3d at 1093). After the hearing, at the Court's request, the Senator provided the Court additional case law on standing via email. Based on the cases cited therein—<u>Village of Schaumburg v. Citizens for a Better Environment</u>, 444 U.S. 620 (1980) and <u>Secretary of State of Maryland v. Joseph H. Munson Company, Inc.</u>, 467 U.S. 947 (1984)—the Court construes Senator Ortiz y Pino's challenge to Section 1-19-29.1(A)(4) as a facial overbreadth challenge.

"[A] facial overbreadth challenge requires that 'the overbreadth of a statute . . . not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." <u>Jordan v. Pugh</u>, 425 F.3d 820, 828 (10th Cir. 2005). "When considering 'a facial challenge to the overbreadth . . . of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.'" <u>Id.</u> (quoting <u>Hoffman Ests. v. Flipside, Hoffman Ests.</u>, 455 U.S. 489, 494 (1982)). If so, a facial challenge is available. <u>Id.</u>

The Court finds that Senator Ortiz y Pino has made a strong showing that he is substantially likely to succeed on the merits of his claim that Section 1-19-29.1(A)(4)'s de facto prohibition on using campaign funds to make certain charitable donations violates the First Amendment.

As an initial matter, the Court must address Secretary Toulouse Oliver's argument that she is not a proper defendant in this case.  Whether the Secretary of State is a proper defendant is relevant to two threshold issues: Article III standing and Eleventh Amendment immunity.  See, e.g., Frank v. Lee, 84 F.4th 1119, 1135-36 (10th Cir. 2023) (Article III standing); Hendrickson v. AFSCME Council 18, 992 F.3d 950, 965 (10th Cir. 2021) (Eleventh Amendment immunity). Secretary Toulouse Oliver has not argued during these preliminary injunction proceedings that she is immune from suit under the Eleventh Amendment or that Senator Ortiz y Pino lacks standing, although her Answer to the Complaint asserts as an affirmative defense that "Plaintiff lacks standing to bring the claims asserted in the Complaint."  ECF No. 4 at 6.  Regardless, the Court may raise both issues sua sponte.  United States ex rel. Burlbaw v. Orenduff, 548 F.3d 931, 941-42 (10th Cir. 2008) (observing that the issue of Eleventh Amendment immunity "may be raised at any time, even on appeal for the first time"); New England Health Care Emps. Pension Fund v. Woodruff, 512 F.3d 1283, 1288 (10th Cir. 2008) ("It is well established that any party, including the court sua sponte, can raise the issue of standing for the first time at any stage of the litigation, including on appeal.").  Because the Court's analysis of the Eleventh Amendment issue informs its analysis of the standing issue, see Frank, 84 F.4th at 1135, the Court begins with the Eleventh Amendment.

Eleventh Amendment sovereign immunity "extends to 'suit[s] against a state official in his or her official capacity' because such suits are 'no different from a suit against the State itself.'" Hendrickson, 992 F.3d at 965 (alteration in original) (quoting Will v. Mich. Dep't of State Police,

491 U.S. 58, 71 (1989)).  However, "Eleventh Amendment immunity 'is not absolute.'"  <u>Id.</u> (quoting <u>Port Auth. Trans-Hudson Corp. v. Feeney</u>, 495 U.S. 299, 304 (1990)).  "Under the <u>Ex parte Young</u> exception, a plaintiff may sue individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks only prospective relief."  <u>Id.</u> (citing <u>Ex parte Young</u>, 209 U.S. 123, 159-60 (1908); <u>Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.</u>, 535 U.S. 635, 645 (2002)).  "To satisfy this exception, the named state official 'must have some connection with the enforcement' of the challenged statute."  <u>Id.</u> (quoting <u>Ex parte Young</u>, 209 U.S. at 157).  "Otherwise, the suit is 'merely making [the official] a party as a representative of the state' and therefore impermissibly 'attempting to make the state a party.'"  <u>Id.</u> (alteration in original) (quoting <u>Ex parte Young</u>, 209 U.S. at 157).  "<u>Ex parte Young</u> does not require that the state official 'have a 'special connection' to the unconstitutional act or conduct.'"  <u>Id.</u> (quoting <u>Prairie Band Potawatomi Nation v. Wagnon</u>, 476 F3d 818, 828 (10th Cir. 2007)).  "But it does require that the state official 'have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty.'"  <u>Id.</u> (quoting <u>Wagnon</u>, 476 F.3d at 828 (quoting <u>Ex parte Young</u>, 209 U.S. at 157)).

Here, the Court finds that Secretary Toulouse Oliver has the requisite connection to the unconstitutional act or conduct: (1) a duty to enforce the CRA, and (2) a demonstrated willingness to exercise that duty.  Specifically, the New Mexico Secretary of State

> has enforcement power granted by the [Campaign Reporting] Act to "adopt and promulgate rules and regulations" in order "to implement the provisions of the [Act];" "initiate investigations to determine whether any provision of the [Act] has been violated," and to "conduct[] a thorough examination . . . of reports filed" in order "to determine compliance with the provisions of the [Act.]"

<u>Republican Party of N.M. v. King</u>, 850 F. Supp. 2d 1206, 1209 (D.N.M. 2012) (quoting N.M. Stat. Ann. §§ 1–19–26.2, –32.1, –34.4), <u>aff'd</u>, 741 F.3d 1089 (10th Cir. 2013).  She also has the power

to refer suspected violations of the CRA to the State Ethics Commission for civil enforcement and to the Attorney General for criminal enforcement, N.M. Stat. Ann. §§ 1-19-32.1(B), -34.6(A). Secretary Toulouse Oliver has demonstrated a willingness to exercise her enforcement duties by, for example, determining that Senator Ortiz y Pino violated the CRA by donating $200 of campaign funds to Ms. Alvarado, preparing an annual report documenting this "unresolved discrepanc[y]," id. § 1-19-32.1, and transmitting it "to the state ethics commission and the attorney general for enforcement pursuant to the provisions of Sections 1-19-34.6 and 1-19-36[,]" id. See Letter from Anastacio F. Trujillo, Disclosure Auditor, Bureau of Elections, Sec'y of State, to Gerald Ortiz y Pino (Feb. 20, 2024), ECF No. 1-3. Therefore, Secretary Toulouse Oliver is a proper defendant for this lawsuit under Ex parte Young. See also Vullo, 602 U.S. at 187-90 (holding that threatening enforcement action and referring matters for prosecution constitutes the application of state power which cannot be used to suppress disfavored expression) (discussing Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 67 (1963)).

For the same reasons, Senator Ortiz y Pino has standing to maintain this suit against Secretary Toulouse Oliver. To satisfy Article III's standing requirement, a plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000). Only the second and third elements—causation and redressability—are at issue here. "Plaintiffs suing public officials can satisfy the causation and redressability requirements of standing by demonstrating 'a meaningful nexus' between the defendant and the asserted injury." Frank, 84 F.4th at 1135 (quoting Kitchen v. Herbert, 755 F.3d 1193, 1201 (10th Cir. 2014)). "Both

requirements depend on 'whether, under Ex parte Young, they are proper state officials for suit.'"
Id. (quoting Kitchen, 755 F.3d at 1201).

The Court has already concluded that under Ex parte Young Secretary Toulouse Oliver is a proper party for suit.  Accordingly, the Court concludes that Senator Ortiz y Pino has standing to maintain this action.[4]

Next, Secretary Toulouse Oliver's argument that Senator Ortiz y Pino's donation to Ms. Alvarado is not "speech" as the Supreme Court defined it in Texas v. Johnson, 491 U.S. 397 (1989) misses the mark because Senator Ortiz y Pino has asserted a facial challenge to Section 1-19-29.1(A)(4).  In Johnson, the Supreme Court observed:

> The First Amendment literally forbids the abridgment only of "speech," but we have long recognized that its protection does not end at the spoken or written word. While we have rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea," we have acknowledged that conduct may be "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments[.]"
>
> In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it."

491 U.S. at 404 (first quoting United States v. O'Brien, 391 U.S. 367, 376 (1968); then quoting Spence v. Washington, 418 U.S. 405, 409 (1974); and then quoting Spence, 418 U.S. at 410-11).

The Court is inclined to agree with Secretary Toulouse Oliver that Senator Ortiz y Pino's $200 donation to Ms. Alvarado is not speech under this definition, as there has been no argument or evidence that the Senator intended to convey a particularized message when making the

---

[4]     Although not germane to the Court's conclusion, the Court further notes that there is "a relaxed standing test for chilled speech in the First Amendment context."  Peck v. McCann, 43 F.4th 1116, 1130 (10th Cir. 2022).

donation, and it is not otherwise "sufficiently imbued with elements of communication . . . ." Johnson, 491 U.S. at 404 (quotation marks and citation omitted).  However, Senator Ortiz y Pino has challenged Section 1-19-29.1(A)(4) as facially overbroad, and the statute effectively prohibits a substantial amount of conduct that does satisfy this definition.

Consider the following hypothetical example: A college student becomes pregnant after being raped and organizes an online fundraising campaign to help raise money to pay for an abortion.  A New Mexico state senator wishes to make an online donation to the young woman's fundraising campaign to support the young woman and to communicate to the senator's constituents that she supports a woman's right to choose to terminate a pregnancy.  Section 1-19-29.1(A)(4)'s de facto ban on using campaign funds to make any charitable donations—other than those to 501(c)(3) non-profit organizations—would prohibit the senator's donation to the college student.  As such, it is a restriction on the senator's First Amendment rights because the donation was intended "to convey a particularized message" and "the likelihood was great that the message would be understood by those who viewed it."  Id.  See also Lamar, 273 F.3d at 1329 (holding that a Florida campaign finance provision prohibiting political candidates from making financial contributions to certain organizations was facially unconstitutional under the First and Fourteenth Amendments).

Restrictions on campaign expenditures, as opposed to campaign contributions, are subject to strict scrutiny.  King, 741 F.3d at 1093 ("Expenditures are core political speech directly advancing public debate, subject to strict scrutiny.").  "Expenditures cannot be restricted unless narrowly tailored to advance a compelling state interest."  Id.  The only compelling state interest the Supreme Court has recognized as justifying a restriction on campaign expenditures is

preventing corruption and the appearance of corruption.  See id. at 1094 (discussing Buckley, 424 U.S. at 33).

> The Supreme Court likens "corruption" to the "subversion of the political process. Elected officials are influenced to act contrary to their obligations of office by the prospect of financial gain to themselves or infusions of money into their campaigns. The hallmark of corruption is the financial quid pro quo: dollars for political favors."

Homans v. City of Albuquerque, 366 F.3d 900, 916 (10th Cir. 2004) (opinion of Tymkovich, J.)[5] (quoting Fed. Election Comm'n v. Nat'l Conservative Pol. Action Comm., 470 U.S. 480, 497 (1985) (hereinafter, NCPAC)).   The Supreme Court has "routinely struck down spending restrictions" on the rationale "that expenditures by a candidate to promote the candidate's political agenda do not pose a particular risk of corrupting the candidate making the expenditure."  Id.

The Court finds that Senator Ortiz y Pino has made a strong showing that he is substantially likely to succeed on the merits for three main reasons.  First, although Secretary Toulouse Oliver argues that "the CRA's ban on gifts to private individuals is necessary to prevent quid pro quo political corruption[,]" ECF No. 12 at 2, she has offered no evidence that Section 1-19-29.1(A)(4)'s de facto ban on using campaign funds to make any charitable donations—other than those to 501(c)(3) non-profit organizations—was enacted to prevent quid pro quo corruption, even though the Court specifically invited her to present such evidence at the August 28, 2024 hearing.  See ECF No. 18.  In Cruz, the government asserted an anti-corruption rationale as supporting certain campaign contribution restrictions.  596 U.S. at 306.  The Supreme Court rejected the argument, stating:

> Because the Government is defending a restriction on speech as necessary to prevent an anticipated harm, it must do more than "simply posit the existence of

---

[5]   Judge Lucero's lead opinion in Homans is the opinion of the court as to Sections I, II, and III.  366 F.3d at 902.  Judge Tymkovich's concurring opinion, joined by Judge O'Brien, is the opinion of the Court as to all other matters.  Id.

the disease sought to be cured." <u>Colorado Republican Federal Campaign Comm. v.</u> <u>Federal Election Comm'n</u>, 518 U.S. 604, 618, 116 S.Ct. 2309, 135 L.Ed.2d 795 (1996). It must instead point to "record evidence or legislative findings" demonstrating the need to address a special problem. <u>Ibid.</u> We have "never accepted mere conjecture as adequate to carry a First Amendment burden." <u>McCutcheon</u>, 572 U.S. at 210, 134 S.Ct. 1434 (quoting <u>Nixon v. Shrink Missouri Government</u> <u>PAC</u>, 528 U.S. 377, 392, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000)).

596 U.S. at 307.  Although at the preliminary injunction stage the burden is on the party seeking the injunction, <u>see</u> <u>Gen. Motors</u>, 500 F.3d at 1226, it is significant that at the August 28, 2024 hearing counsel for Secretary Toulouse Oliver represented that he thoroughly researched the legislative intent behind Section 1-19-29.1(A)(4) but came up with nothing.[6]

Second, even if there is evidence that Section 1-19-29.1(A)(4) was enacted to prevent <u>quid</u> <u>pro quo</u> corruption (or the appearance thereof), it appears that such evidence may <u>still</u> be insufficient to satisfy strict scrutiny under Tenth Circuit precedent.   Specifically, Judge Tymkovich's controlling opinion in <u>Homans</u> suggests that although "it is theoretically possible to bring evidence of corruption in support of spending limitations under <u>Buckley</u>," <u>id.</u> at 915, the government can <u>never</u> justify a campaign expenditure restriction under the anti-corruption rationale, <u>see</u> <u>id.</u> at 916.  This is because "[t]he Supreme Court has made it clear that a <u>candidate's</u> expressing his political views is not corrupting: 'There is nothing invidious, improper, or unhealthy in permitting [legally-raised] funds to be spent to carry the candidate's message to the electorate.'" <u>Id.</u> at 917 (quoting <u>Buckley</u>, 424 U.S. at 56) (alteration in original).   "In other words, the candidate's spending does nothing to corrupt the candidate."   <u>Id.</u>   "Thus, candidate spending

---

[6]      Counsel for Secretary Toulouse Oliver also indicated, however, that his research on the legislative intent behind Section 1-19-29.1(A)(4) was ongoing.  For example, he contacted the Legislative Council Service which had not responded to his inquiries by the date of the hearing.  Thus, although the evidence may ultimately reveal that the legislative intent behind Section 1-19-29.1(A)(4) was the prevention of <u>quid pro quo</u> corruption or the appearance thereof, there is currently no evidence of that in the record.

limitations cannot be justified by the anti-corruption rationale."[7]  Id. (citing Buckley, 424 U.S. at 55-57).

Third, even assuming that (1) campaign expenditure restrictions could be justified by the anti-corruption rationale and (2) there is historical evidence of quid pro quo corruption justifying Section 1-19-29.1(A)(4)'s de facto restrictions on certain charitable donations, it is unlikely that Section 1-19-29.1(A)(4)'s restriction on charitable donations is narrowly tailored to serving that interest.  As previously stated: "The hallmark of corruption is the financial quid pro quo: dollars for political favors."  Homans, 366 F.3d at 916 (opinion of Tymkovich, J.) (quoting NCPAC, 470 U.S. at 497).  "[T]he candidate's spending does nothing to corrupt the candidate."  Id. at 917.  As such, it is unlikely that a restriction on a candidate's spending is narrowly tailored to preventing quid pro quo corruption or the appearance thereof.  See id. (agreeing with the Sixth Circuit that "campaign spending limits cannot be justified by the anti-corruption rationale" (quoting Kruse v. City of Cincinnati, 142 F.3d 907, 915 (6th Cir. 1998))).

For these reasons, the Court finds that Senator Ortiz y Pino has made a strong showing that he is substantially likely to succeed on the merits of his claim.

---

[7]  This Court does not subscribe to Judge Tymkovich's suggestion that limitations on candidates' spending can never be justified by the anti-corruption rationale.  Although the Supreme Court has stated that "the financial quid pro quo: dollars for political favors" is the "hallmark of corruption[,]" NCPAC, 470 U.S. at 497, it is not the only type of corruption.  To corrupt is to "pervert the integrity of."  Corrupt, Black's Law Dictionary 436 (12th ed. 2024).  When a political candidate uses campaign funds to pay a citizen to vote for him, he is perverting—that is, corrupting—the electoral process, which is why vote buying is illegal.  See 18 U.S.C. § 597 (criminalizing vote buying).  Indeed, it is telling that Congress chose to pass the original statute prohibiting vote-buying, 2 U.S.C. § 250 (repealed June 25, 1948)—the predecessor statute to 18 U.S.C. § 597—as part of the "Federal Corrupt Practices Act."  See United States v. Foote, 42 F. Supp. 717, 720 (D. Del. 1942) (observing that "the clear purpose of the Federal Corrupt Practices Act [is] to prevent corruption in public elections").  One can imagine other campaign "expenditures" to individuals that could fairly be described as corrupting, such as a "charitable donation" to a mob boss, or to the candidate's child's high school science department to thwart a failing grade.

In Homans, the Tenth Circuit addressed a challenge to a law placing monetary limits on campaign expenditures.  366 F.3d at 902.  As such, it is possible that Judge Tymkovich's suggestion that the anti-corruption rationale can never justify limitations on candidates' spending referred to limitations on the amount of expenditures a candidate can make, and not to limitations on types of expenditures a candidate can make.

**b. Irreparable injury**

Senator Ortiz y Pino argues that because a First Amendment right is involved, no further showing of irreparable injury is necessary.  ECF No. 10 at 11 (citing Elrod v. Burns, 427 U.S. 347, 373 (1976)).  He argues that, in any event, he "faces [three] irreparable injuries," including (1) reputational injury, (2) injury to his First Amendment rights because he would like to make future political expenditures similar to the one he made to Ms. Alvarez, and (3) the threat of enforcement action for past political expenditures for charitable purposes not involving 501(c)(3) organizations. Id.

Secretary Toulouse Oliver argues that Senator Ortiz y Pino has failed to establish that he would suffer irreparable harm absent a preliminary injunction.  ECF No. 12 at 9.  Specifically, she argues that enjoining her from enforcing Section 1-19-29.1(A)(4) would be fruitless because she "has no power to enforce the CRA or compel the Attorney General not to enforce the CRA."  Id. She argues that "[t]he only 'harm' [Senator Ortiz y Pino] will incur is an inability to distribute his campaign funds to private individuals, and Plaintiff has made no showing that failure to make any such gift would cause irreparable harm."  Id. at 10.

In his Reply, Senator Ortiz y Pino does not directly address Secretary Toulouse Oliver's arguments regarding irreparable injury.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  Elrod, 427 U.S. at 373.  Consequently, a plaintiff may establish irreparable injury if he demonstrates that he is likely to succeed on the merits of his claim that his First Amendment rights "were either threatened or in fact being impaired at the time relief was sought."  Id.  See also Winter, 555 U.S. at 22 (holding that the preliminary injunction standard "requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the

absence of an injunction"); <u>M.G. ex rel. Garcia v. Armijo</u>, 117 F.4th 1230, 1238 (10th Cir. 2024) ("Plaintiffs seeking a preliminary injunction must establish . . . they are 'likely to suffer irreparable harm in the absence of preliminary relief . . . .'") (quoting <u>Winter</u>, 555 U.S. at 20); <u>Hobby Lobby Stores, Inc. v. Sebelius</u>, 723 F.3d 1114, 1146 (10th Cir. 2013) ("We have explicitly held—by analogy to First Amendment cases—that establishing a <u>likely</u> RFRA violation satisfies the irreparable harm factor.") (emphasis added); <u>Legacy Church, Inc. v. Kunkel</u>, 455 F. Supp. 3d 1100, 1162-63 (D.N.M. 2020) (finding that the Supreme Court's reasoning in <u>Winter</u> "suggests that courts should interpret the 'irreparable harm' factor in conjunction with whether the movant is likely to succeed on the merits").

As explained in Section III(a), <u>supra</u>, Senator Ortiz y Pino has made a strong showing that he is substantially likely to succeed on the merits of his claim that Section 1-19-29.1(A)(4)'s <u>de facto</u> prohibition on using campaign funds to make charitable donations to individuals violates the First Amendment. As such, the Court finds that he has established irreparable injury. <u>See</u> <u>Hobby Lobby</u>, 723 F.3d at 1146; <u>see also</u> <u>Legatus v. Sebelius</u>, 901 F. Supp. 2d 980, 997 (E.D. Mich. 2012) ("Violation of a First Amendment right in itself constitutes irreparable harm. When First Amendment freedoms are at risk, the irreparable harm factor 'merges' with the likelihood of success, such that if the plaintiff shows he is likely to succeed on the merits, he has simultaneously proven he will suffer an irreparable harm.") (citations omitted).[8]

---

[8]     As discussed in Section III(a), <u>supra</u>, the Court doubts that Senator Ortiz y Pino's $200 donation to Ms. Alvarez constitutes "speech." Consequently, the Court equally doubts that Senator Ortiz y Pino can establish irreparable harm to himself in this case.

However, First Amendment overbreadth challenges may be brought be "a litigant whose own activities are unprotected[.]" <u>Vill. of Schaumburg</u>, 444 U.S. at 634. In this context, "courts are inclined to disregard the normal rule against permitting one whose conduct may validly be prohibited to challenge the proscription as it applies to others because of the possibility that protected speech or associative activities may be inhibited by the overly broad reach of the statute." <u>Id.</u> <u>See also</u> <u>Joseph H. Munson Co.</u>, 467 U.S. at 957 ("[W]here the claim is that a statute is overly broad in violation of the First Amendment, the Court has allowed a party to assert the rights of another without regard to the ability of the other to assert his own claims and with no requirement that the person making the attack

However, the Court further finds that Senator Oritz y Pino has offered no evidence or argument supporting a finding that his reputation has been or may be injured; and in any event, reputational injury can be remedied through damages and is therefore not "irreparable."   See Hunter v. Hirsig, 614 F. App'x 960, 963 (10th Cir. 2015) ("The Supreme Court has expressly held that even if the record reflects 'a satisfactory showing . . . that [the litigant's] reputation would be damaged as a result of the challenged agency action, . . . the showing [will] fall[ ] far short of the type of irreparable injury which is a necessary predicate to the issuance of a[n] . . . injunction.'") (quoting Sampson v. Murray, 415 U.S. 61, 91-92 (1974) (alterations in original)); Schrier v. Univ. of Colo., 427 F.3d 1253, 1266-67 (10th Cir. 2005) ("[B]ecause the types of injuries alleged by Dr. Schrier"—including reputational injury—"occurred in the past or were speculative, and could be remedied through money damages should he ultimately prevail on his claims, a preliminary injunction was unwarranted.").   Nor has he otherwise shown irreparable injury supporting an injunction requiring Secretary Toulouse Oliver to withdraw her February 2024 referral of Senator Ortiz y Pino to the State Ethics Commission and the Attorney General's Office.   The Parties agree that the limitations period for criminal enforcement by the Attorney General has expired, and the Ethics Commission has stated that it will not be instituting civil enforcement proceedings.

Therefore, the Court finds that Senator Ortiz y Pino has satisfied the irreparable injury factor with respect to his request for an order enjoining Secretary Toulouse Oliver from enforcing

---

demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.") (citations and quotation marks omitted); id. at 958 ("Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court.").   Thus, even though the Court is dubious that Senator Ortiz y Pino can establish irreparable injury to himself, he has shown that Section 1-19-29.1(A)(4)'s de facto ban on charitable donations to individuals is likely facially unconstitutional and, therefore, he has established the irreparable injury factor.   See Legatus, 901 F. Supp. 2d at 997; see also Exodus Refugee Immigr., Inc. v. Pence, 165 F. Supp. 3d 718, 738 (S.D. Ind. 2016) (finding that organization that had prudential standing to bring action on behalf of refugees challenging constitutionality of Governor's directive established irreparable harm factor because irreparable harm is presumed for certain constitutional violations).

Section 1-19-29.1(A)(4)'s <u>de facto</u> ban on charitable donations to individuals, but not with respect to his request for an order requiring Secretary Toulouse Oliver to withdraw her February 2024 referral of Senator Ortiz y Pino to the State Ethics Commission and the Attorney General's Office.

### c.  Balancing of the harms and the public interest

Senator Ortiz y Pino argues that the threatened injury to his speech outweighs any injury the preliminary injunction may cause to Secretary Toulouse Oliver's ability to enforce the statute because (1) Secretary Toulouse Oliver cannot articulate any corruption interest in enforcing Section 1-19-29.1(A)(4)'s <u>de facto</u> ban on charitable expenditures to individuals, and (2) her interest in reporting Senator Ortiz y Pino to the authorities is "illusory."  ECF No. 10 at 12-14.  He also argues that the public interest weighs in favor of protecting the First Amendment.  <u>Id.</u> at 15.

Secretary Toulouse Oliver argues that "New Mexico has a compelling interest in enforcing the CRA and would suffer irreparable harm if enjoined from doing so."  ECF No. 12 at 10 (citing <u>Maryland v. King</u>, 567 U.S. 1301, 1303 (2012) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.")).  She repeats her belief that "an injunction against her would have no practical effect because she has no power to enforce the CRA herself or to compel the attorney general not to so enforce[,]" <u>id.</u>, but assuming an effective injunction against enforcement of Section 1-19-29.1(A)(4) were to issue, it "would completely divest the State of New Mexico from its ability to regulate improper campaign contributions, weakening public confidence in their elected officials by failing to regulate <u>quid pro quo</u> corruption or the appearance of the same[,]" <u>id.</u>

In his Reply, Senator Ortiz y Pino does not directly address Secretary Toulouse Oliver's arguments regarding the balancing of the harms and the public interest.

The Court finds that Senator Ortiz y Pino has made a strong showing that these factors weigh in his favor. The threatened injury to Senator Ortiz y Pino's First Amendment rights to political speech outweigh the harm a preliminary injunction may cause Secretary Toulouse Oliver. The State will not be prevented from enforcing the CRA, it simply will be preliminarily enjoined from enforcing Section 1-19-29.1(A)(4)'s de facto ban on using campaign funds to make charitable donations to individuals. A preliminary injunction will not, as Secretary Toulouse Oliver argues, prevent the State from regulating campaign contributions, as Section 1-19-29.1(A)(4) does not regulate campaign contributions. And because a political "candidate's spending does nothing to corrupt the candidate[,]" Homans, 366 F.3d at 917 (opinion of Tymkovich, J.), a preliminary injunction will not weaken public confidence by preventing New Mexico from regulating quid pro quo corruption (or the appearance thereof).

Finally, the Court finds that an injunction will not adversely affect the public interest. "[P]olitical speech is the lifeblood of democracy—it is the means by which citizens learn about candidates, hold their leaders accountable, and debate the issues of the day." King, 741 F.3d at 1092. As such, enjoining a statute that restricts political speech promotes the public interest.

## IV.    Conclusion

For the reasons set forth above, the Court is constrained to find that Senator Ortiz y Pino has satisfied his burden of demonstrating that a preliminary injunction should issue enjoining Secretary Toulouse Oliver from enforcing the de facto ban on charitable expenditures to individuals under N.M. Stat. Ann. § 1-19-29.1(A)(4).[9] However, the Court finds that Senator Ortiz

---

[9] It is not lost on the Court that this federal lawsuit involves a First Amendment challenge to a New Mexico campaign finance law over the repayment of a $200 donation to a high school student out of campaign funds that likely does not satisfy the Supreme Court's definition of speech. See supra Section III(a). Nor is it lost on the Court that Senator Ortiz y Pino's attorney, Mr. Baca, "wrote the 2009 amendments to the Campaign Reporting Act, and lobbied those amendments through the Legislature." ECF No. 1-2 at 2. As such, Mr. Baca is challenging the

y Pino has failed to show irreparable injury absent an injunction with respect to his request for an

order requiring Secretary Toulouse Oliver to withdraw her February 2024 referral of Senator Ortiz

y Pino to the State Ethics Commission and the Attorney General's Office.

      Therefore, it is **HEREBY ORDERED** that:

1. Plaintiff's Motion for Preliminary Injunction (ECF No. 10) is **GRANTED IN PART AND DENIED IN PART** consistent with this Order;

2. Secretary Toulouse Oliver is **ENJOINED** from enforcing the <u>de facto</u> ban on charitable donations to individuals under Section 1-19-29.1(A)(4).  Accordingly, the Secretary of State's Office shall not refer a campaign fund's charitable expenditure to an individual to the State Ethics Commission or the Attorney General's Office for civil and criminal enforcement.[10]

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

---

constitutionality of a law that he either wrote or failed to amend, billing his client $550 for doing so, <u>see</u> <u>id.</u>, and planning to move the Court for an order requiring Secretary Toulouse Oliver to pay his attorney's fees (should he ultimately prevail on the merits), <u>see</u> <u>id.</u>  The Court takes its duty to entertain constitutional challenges to laws very seriously, but questions whether this case was the best vehicle to challenge Section 1-19-29.1(A)(4), considering the amount of judicial resources it has consumed and will continue to consume.

[10]    If a campaign reports a charitable expenditure to an individual that raises the specter of <u>quid pro quo</u> corruption, Secretary Toulouse Oliver may file a motion seeking partial relief from the preliminary injunction.